In re MORRISTOWN LINCOLN–MER-
CURY, INC., Debtor.

BANK OF COMMERCE, MORRISTOWN,
Tennessee, Plaintiff,

v.

J & D COAL COMPANY, Morristown
Lincoln-Mercury, Inc., and Richard
Stair, Jr., Trustee, Defendants.

Bankruptcy No. 3–81–01889.

Adv. No. 3–82–0897.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 13, 1982.

See also, Bkrtcy., 25 B.R. 375; 25
B.R. 377.

Taylor, Tilson, Inman & Reams, H. Scott
Reams, Morristown, Tenn., for plaintiff.

Fowler & Rowntree, John H. Fowler,
Knoxville, Tenn., for defendant J & D Coal
Co.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

■ The dispute in this proceeding in-
volves a 1982 Lincoln Mark VI automobile.
The contestants [1] are J & D Coal Company
(J & D), and Bank of Commerce. J & D
contends that it purchased the vehicle in
the ordinary course of business, paid the
purchase price in full, received a manufac-
turer's certificate of origin and bill of sale,
and is therefore the owner of the vehicle.
The Bank of Commerce avers that it holds a
perfected security interest in the vehicle
and that it is entitled to possession. The
court finds that the Bank of Commerce
does not have a security interest against the
controverted vehicle because Morristown
Lincoln-Mercury, Inc. (MLM), the debtor,
sold the car to and received payment from J
& D previous to execution of a trust receipt
in favor of the Bank.

Joe Hubbs, President of J & D, testified
that Ron Johnson, Vice-President of MLM,
came to his home to sell him a car. In July
1981, Hubbs decided to purchase a 1982
Lincoln Mark VI from MLM. A check dat-
ed August 3, 1981, in the amount of $10,-
000.00 drawn on the account of J & D and
payable to MLM was duly executed by
Hubbs. Hubbs took possession of the auto-
mobile on behalf of J & D during October
1981. A manufacturer's certificate of ori-
gin and a bill of sale, both notarized on
October 31, 1981, reflect that the automo-
bile was sold to J & D. The balance due on
the purchase price was satisfied by the
trade-in of a 1980 Thunderbird and a check
dated November 9, 1981, from J & D pay-
able to MLM in the amount of $3,111.00.

A second bill of sale (Ex. 4) dated October
14, 1981, and notarized on November 14,
1981, by Sandy Huskey, a former employee
of MLM, purportedly reflects the sale of the
automobile in question by *J & D* to *MLM.*
This second bill of sale is signed "J & D

---

1. Neither the debtor nor the Trustee assert any    interest in the vehicle.

Coal Co. By Joe Hubbs," but Hubbs denies that the signature is his. The signature is indeed a forgery.[2] There is little resemblance, if any, between the signature on this second bill of sale and Hubbs' actual signature. See Ex. 4 and Ex. 7.

The forged bill of sale, a duplicate certificate of origin (Ex. 3) dated November 9, 1981, on the reverse of which is a statement of transfer to J & D, a trust receipt granting a security interest in the contested vehicle, and a promissory note were delivered to Bank of Commerce on or about November 17, 1981, by MLM in exchange for $19,000.00. The Bank contends that its security interest was perfected by virtue of a previously recorded financing statement covering the debtor's automobile inventory.

■ Since MLM had delivered the 1982 Lincoln and received payment in full from J & D prior to November 17, 1981, MLM could not grant an enforceable security interest against the vehicle to the Bank. Furthermore, assuming *arguendo* that the Bank's security interest had been legitimate, J & D is entitled to the protection afforded to a buyer in ordinary course by Tenn.Code Ann. § 47–9–307 (1979).[3]

The Bank of Commerce, although it has no rights in and to the 1982 Lincoln, is entitled to judgment against MLM for such sum as remains unpaid under the terms of the $19,000.00 promissory note dated November 17, 1981.

This Memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.

---

2. In her deposition testimony the notary stated that she did not specifically remember any appearance by Hubbs before her for the purpose of executing the bill of sale. She further testified that she would have notarized the bill of sale if Ron Johnson had brought in the bill of sale and stated that Joe Hubbs had signed it.

3. A buyer in ordinary course of business ... other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. Tenn.Code Ann. § 47–9–307 (1979).